**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**

In re:                                    )
                                          )     MDL Docket No. _____
SAMSUNG DATA BREACH                       )
LITIGATION                                )
                                          )

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF**
**ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28**
**U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED**
**PRETRIAL PROCEEDINGS**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION .................................................................................................. 1

II.     LEGAL STANDARD ............................................................................................ 2

III.    ARGUMENT ........................................................................................................ 3

        A.      The Litigation Satisfies the Requirements for Consolidation and Transfer

                Under 28 U.S.C. § 1407 ............................................................................ 3

                1.      The Litigation Involves Common Questions of Fact ................................. 3

                2.      The Parties Face Duplicative Discovery Absent Transfer and

                        Consolidation ................................................................................. 5

                3.      Transfer and Consolidation Will Prevent Inconsistent Pretrial Rulings .. 5

                4.      There are Enough Actions to Support Transfer and Centralization ......... 6

        B.      The Northern District of California is the Appropriate Transferee Forum ......... 6

IV.     CONCLUSION ..................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*In re Acetaminophen – ASD/ADHD Products Liability Litigation*,
   MDL No. 3043
   2022 U.S. Dist. LEXIS 183759 (J.P.M.L. 2022) .................................................................8

*In re Alodex Corp*.,
   380 F. Supp. 790 (J.P.M.L. 1974) ...................................................................................6

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*,
   410 F. Supp. 3d 1350 (J.P.M.L. 2019) ...........................................................................4

*In re Amoxicillin Patent & Antitrust Litig.*,
   449 F. Supp. 601 (J.P.M.L. 1978) ...................................................................................6

*In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*,
   509 F. Supp. 3d 1362 (J.P.M.L. 2020) ...........................................................................4

*In re Enron Sec. Derivative & ERISA Litig.*,
   509 F. Supp. 3d 1362 (J.P.M.L. 2020) ...........................................................................5

*In re: Equifax, Inc., Customer Data Sec. Breach Litig.*,
   289 F. Supp. 3d 1322 (J.P.M.L. 2017) ...........................................................................4

*In re Exactech Polythelene Orthopedic Products Liability Litigation*,
   MDL No. 3044
   2022 U.S. Dist. LEXIS 183760 (J.P.M.L. 2022) .................................................................8

*In re: Facebook, Inc Consumer Privacy User Profile Litigation*,
   325 F. Supp. 3d 1362 (N.D. Cal. 2018) ...........................................................................8

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   363 F. Supp. 3d 1372 (J.P.M.L. 2019) ........................................................................4, 9

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
   544 F. Supp. 3d 1371 (J.P.M.L. 2021) ...........................................................................4

*In re Pac. Fertility Ctr. Litig.,*
  No. 18-cv-01586-JSC
  2022 U.S. Dist. LEXIS 184274 (N.D. Cal. 2020) ....................................................8

*In re Phila. Life Ins. Co. Sales Pracs. Litig.,*
  149 F. Supp. 2d 937 (J.P.M.L. 2001).........................................................................6

*In re Plumbing Fixture Cases,*
  298 F. Supp. 484 (J.P.M.L. 1968)..............................................................................3

*In re T-Mobile Customer Data Sec. Breach Litig.,*
  576 F. Supp. 3d 1373 (J.P.M.L. 2021)....................................................................3, 8

*In re Wireless Tel. Replacement Prot. Programs Litig.,*
  180 F. Supp. 2d 1381 (J.P.M.L. 2002).......................................................................6

*In re Resource Exploration Inc. Sec. Litig.,*
  483 F. Supp. 817 (J.P.M.L. 1980)..............................................................................5

<u>Statutes</u>

28 U.S.C. § 1407 .......................................................................................................*passim*

<u>Rules</u>

Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ......................1

<u>Other Authorities</u>

Manual for Complex Litigation (Fourth) § 20.131 (2004) ..................................................3

## I.     INTRODUCTION

Samsung is among the top five largest technology companies in the world, and the second largest in 2021, with over $200 billion of annual revenue and over a $360 billion market cap.[1]  It is a major producer of a wide array of electronic devices, including mobile phones, smartphones, televisions, and semiconductor chips. In order to gain access to Samsung's device features, software updates, product-related benefits and warranties, and other services, Plaintiffs and millions of other consumers are required to register for a Samsung account and provide their personal data to Samsung, including, their names, dates of birth, postal addresses, precise geolocation data, email addresses, phone numbers, the Samsung products they own, and other information.

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Naeem Seirafi and Shelby Holtzclaw, Plaintiffs in the case styled *Seirafi, et al. v. Samsung Electronics America, Inc.,* No. 3:22-cv-5176 (N.D. Cal. Sep. 9, 2022) (collectively, "Movants"), respectfully move the Judicial Panel on Multidistrict Litigation for an Order transferring the nine cases listed in the Schedule of Actions filed concurrently herewith (collectively, "the Actions"), as well as any tag-along cases subsequently filed involving similar facts or claims, to the U.S. District Court for the Northern District of California for coordinated or consolidated proceedings.

Movants are plaintiffs in the first-filed[2] of the nine currently pending class action cases filed to date against Samsung Electronics America, Inc. ("Samsung") relating to the same recent data breaches Samsung failed to prevent. Plaintiffs anticipate many additional cases to be filed and some state cases to be removed, as well. Plaintiffs in each of the Actions allege that Samsung failed

---

[1] *See* Kim Eun-jin, *Samsung Electronics Ranked 4th in Forbes' List of World's Largest Tech Companies,* BUSINESS KOREA (May 16, 2022, 4:48 PM), http://www.businesskorea.co.kr/news/articleView.html?idxno=92787.

[2] Samsung faced an earlier filed class action lawsuit in the District Court of Nevada, *Harmer v. Samsung Electronics America, Inc.,* 2:2022-cv-01437 (filed on September 6, 2022), however, that case has since been dismissed. As such, Movants are currently the first filed.

to institute adequate security measures and neglected system vulnerabilities that led to the data breaches.

As alleged in the Actions, the consequences of Samsung's data breaches are severe: the data breaches allowed hackers to access the personal identifiable information ("PII"), including first and last names, postal addresses, precise geolocation data, email addresses, and telephone numbers, for Plaintiffs and the Class. This PII has since been publicly leaked online, which has allowed for digital and potential physical attacks against Plaintiffs and the Class. Now that the PII has been leaked, it is available for other parties to sell or trade and will continue to be at risk for the indefinite future. In fact, the U.S. Government Accountability Office found that, "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."

All of the Actions allege violations of various state and federal statutes and common law principles against Samsung relating to the breaches, and all seek certification of similar classes or subclasses of victims.

Consistent with the Panel's course in recent data breach litigation, Movants seek the consolidation and transfer of the Actions to the U.S. District Court for the Northern District of California, where its allegedly tortious conduct is centered, where crucial witnesses and documents will be located, and where the Court has the resources to handle and efficiently administer this MDL. All of the class actions filed against Samsung contain common allegations and common questions of fact.

## II.    LEGAL STANDARD

Actions containing allegations with common questions of fact may be transferred and consolidated or coordinated pursuant to section 1407 if transfer will facilitate the convenience of the parties and witnesses and will promote the just and efficient conduct of the transferred cases. 28 U.S.C. § 1407. The Panel typically considers four factors in deciding whether to transfer a case under Section 1407:

        a.      the elimination of duplication in discovery;

2

b.      the avoidance of conflicting rules and schedules;

c.      the reduction of litigation cost; and

d.      the conservation of the time and effort of the parties, attorneys, witnesses, and courts.

*See* Manual for Complex Litigation (Fourth) § 20.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)). Each of these factors favors transfer and consolidation of the cases filed against Samsung.

## III.    ARGUMENT

### A.    The Litigation Satisfies the Requirements for Consolidation and Transfer Under 28 U.S.C. § 1407

Pretrial transfer and consolidation under section 1407 is appropriate and necessary here. The Actions involve similar allegations and legal standards and will likely be numerous. Unless these cases are consolidated, the parties will incur excessive costs due to duplicative discovery and will face the risk of inconsistent rulings on a variety of matters.

#### 1.    The Litigation Involves Common Questions of Fact

In assessing whether consolidation is appropriate under section 1407, the Panel looks to the pleadings to determine the extent to which common questions of fact are present. The Complaints in these cases clearly present common questions of fact. Each Complaint is based on allegations that Samsung allowed massive security breaches in violation of various statutes and state common law. In addition, the Complaints generally seek certification of similar classes and/or subclasses.[3] This Panel has consistently consolidated large-scale data breach cases such as this because they inherently involve common questions of fact. *See, e.g.*, *In re: T-Mobile*

---

[3] Section 1407 does not require a complete identity of factual issues or parties as a prerequisite to transfer. *In re: Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) ("the presence of . . . differing legal theories is not significant where, as here, the actions still arise from a common factual core."). Here, the substantial factual overlap among all actions is undeniable, and any slight variations in the claims alleged is immaterial to the benefits to be had from centralized proceedings.

*Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d 1373,1374 (J.P.M.L. 2021) (consolidation appropriate where actions "involve common questions of fact…and will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation" involving a data security breach of T-Mobile's systems that allegedly compromised the personal information of approximately 54 million consumers.); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. MDL 2994, 544 F. Supp. 3d 1371, at *1 (J.P.M.L. 2021) (consolidation appropriate where actions "share factual issues relating to a June 2020 incident in which Mednax's e-mail system was breached, potentially compromising the personally identifiable and health-related information of nearly two million individuals."); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363 (J.P.M.L. 2020) ("These putative class actions present common factual questions concerning an alleged ransomware attack and data security breach of Blackbaud's systems from about February 2020 through May 2020 that allegedly compromised the personal information of millions of consumers doing business with entities served by Blackbaud's cloud software and services."); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1354 (J.P.M.L. 2019) (consolidation appropriate where "actions present common factual questions concerning an alleged data breach of AMCA's systems from about August 2018 through March 2019, that allegedly compromised patient data provided to AMCA by Quest, LabCorp, Bio-Reference, and other medical testing laboratories."); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) (consolidation appropriate where actions "share factual issues concerning a recently-disclosed breach of Marriott's Starwood guest reservation database from 2014 to 2018. The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections"); *In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1324–25 (J.P.M.L. 2017) (consolidation appropriate where actions "share factual issues concerning the recent cybersecurity incident involving Equifax in which the personally identifiable information of more than 145 million consumers was compromised.")

4

### 2. The Parties Face Duplicative Discovery Absent Transfer and Consolidation

Because the allegations in all the cases are substantially similar and derive from the same common event, the parties face duplicative discovery if the cases are not transferred and consolidated. This is an important consideration for the panel in that transfer and consolidation "ensure[s] that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980). The parties in these actions will necessarily engage in duplicative discovery. All Plaintiffs will be seeking the same documentation from Samsung and will likely request to depose the same witnesses. Samsung will raise the same defenses, argue the same class certification and discovery objections, seek the same protective orders, and assert the same privileges in each case. Accordingly, consolidation of the cases will permit the parties to coordinate their efforts in a single proceeding, thereby promoting efficiency and preserving parties' and judicial resources.

### 3. Transfer and Consolidation Will Prevent Inconsistent Pretrial Rulings

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible res judicata or collateral estoppel effects on other cases. *See In re Enron Sec. Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). Because of the similarity of the allegations in the Complaints, and the likelihood that future filed actions will contain the same allegations, the possibility of inconsistent rulings on pretrial motions is substantially increased. For example, Plaintiffs anticipate that Samsung will file motions to dismiss, motions to compel arbitration, and motions for summary judgment. Inconsistent rulings on those dispositive motions would create inherent conflicts as the Actions

seek to certify overlapping classes. In addition, because of the similarity in the allegations, Samsung will assert the same defenses in opposition to Plaintiffs' claims, creating a real risk of inconsistent pretrial rulings. In light of this risk, centralization is in the best interests of all parties to the litigation as well as the courts.

### 4.     There are Enough Actions to Support Transfer and Centralization

As stated above, there are currently nine federal class action cases pending against Samsung relating to the breaches, and Movants believe many more will follow given that the cases have received a great deal of publicity, involve millions of individuals.[4] The Panel has routinely ordered centralization even where three or fewer cases are pending. *See, e.g.*, *In re Wireless Tel. Replacement Prot. Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (consolidating three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Phila. Life Ins. Co. Sales Pracs. Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (consolidating two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation); *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (consolidating three cases involving patent and antitrust issues); *In re Alodex Corp.*, 380 F. Supp. 790, 791 (J.P.M.L. 1974) (consolidating three securities actions).

Given the number of current and likely tag-along actions related to these data breaches, transfer and centralization is appropriate.

### B.     The Northern District of California is the Appropriate Transferee Forum

The applicable factors support the United States District Court for the Northern District of California as the appropriate jurisdiction for consolidation of pretrial proceedings in this litigation because: (1) Defendant's decision making processes affecting data and privacy stem from its San Francisco offices,[5] (2) Defendant markets and sells an extensive inventory of

---

[4] Movants are aware of at least one action filed in California State Court, Los Angeles County, *Kelechian v. Samsung Electronics America, Inc.* (22-stcv-30284), which may be removed to the California Central District Court.

[5] Complaint, ¶ 7.

products and services in the Northern District of California, (3) Defendant gains revenue and profits from doing business in this District, (4) consumers sign up for Samsung accounts and provide Samsung with their PII in this District, (5) Defendant employs numerous people in this District, a number of whom work specifically on making decisions regarding the data privacies and handling of consumers' data;[6] (6) Movants are the first filed currently pending case in the Northern District of California; importantly, (7) the Honorable Jacqueline Scott Corley is well positioned to administer the MDL, and (8) it presents a geographically accessible venue for this nationwide litigation.

Defendant is headquartered in New Jersey; however, it also maintains one of the largest corporate offices in San Jose, California, less than an hour away from the proposed transferee courthouse. Defendant's decision-making process affecting data and privacy stem from its offices in the Northern District of California. Defendant also gains revenue and profits in doing business in this district, while also employing numerous people in San Jose/San Francisco area. Furthermore, Samsung's related entity, a wholly owned subsidiary of Samsung Electronics Company, Samsung Research America which plays a key role in developing core technology to enhance the competitiveness of Samsung's products,[7] was likely involved in the data breach, or has witnesses who can shed the light to the relevant facts as to how Defendant uses and maintains the PII. In fact, "Samsung Research America plays a critical role in developing next generation software, user experiences, and services for Samsung Electronics in key domains, such as artificial intelligence, 5G/6G communication networks, and digital health, among others."[8] Samsung Research America is headquartered in Mountain View, California (about 13 miles from

---

[6] Defendant's Vice President who handles "Big Data" practices for Samsung is located in San Francisco, CA. Defendant's Vice President is in charge of managing one of the "largest and most dynamic" "Big Data" practices. Therefore, it appears that the data-related privacy policies, protections, important decisions impacting consumers' data, and other "data driven decision making processes" stem from Defendant's San Francisco offices. *See also id*.

[7] Samsung, *Life at Samsung Research America,* (available at https://www.sra.samsung.com/life-at-sra/).

[8] Samsung, *Samsung Research America,* (available at https://research.samsung.com/sra).

the courthouse). As a result, many of the crucial witnesses and documents are located in the Northern District of California. *In Re: Acetaminophen – ASD/ADHD Products Liability Litigation,* MDL No. 3043, 2022 U.S. Dist. LEXIS 183759 (J.P.M.L. 2022) (transferring MDL to the Southern District of New York because "significant common evidence [was] expected to be located in this area" because "many of the manufacturers supplying the retailer defendants [were] based in or near New York").

Honorable Jacqueline Scott Corley is one of the recently appointed District Court Judges, who is currently presiding over one MDL action, and therefore has more bandwidth and resources to administer this MDL then some other judges. *In re: Exactech Polythelene Orthopedic Products Liability Litigation,* MDL No. 3044, 2022 U.S. Dist. LEXIS 183760, at *4 (J.P.M.L. 2022) (transferring 75 actions to the Eastern District of New York because it was a "relatively underutilized transferee district" and thus had the resources to administer the complex MDL actions); *In re T-Mobile Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d 1373, 1375 (J.P.M.L. 2021) (transferring the MDL cases to Missouri in part because it had "the capacity to efficiently manage" the litigation). She is a well-respected jurist, with the necessary multidistrict litigation experience, who has been a Magistrate Judge for 10 years before her recent appointment. As a Magistrate Judge, Judge Corley also presided over numerous complex actions (as the Article III Judge with the parties' consent), including privacy, antitrust cases, and product liability. Judge Corley also presided over highly complex discovery disputes in several MDLs. *See e.g. In re: Qualcomm Antitrust Litigation,* 3:2017-md-02773 (N.D. Cal. 2017) (assigned to Judge Koh; subsequently reassigned exclusively to Judge Corley); *In re: Facebook, Inc Consumer Privacy User Profile Litigation,* 325 F. Supp. 3d 1362, 1364 (N.D. Cal. 2018) (assigned to Judge Chhabria). With consent acting as an Article III judge, Judge Corley presided over 200 of related cases in *In re Pac. Fertility Ctr. Litig.,* No. 18-cv-01586-JSC, 2020 U.S. Dist. LEXIS 184274 (N.D. Cal. 2020). Therefore, Judge Corley has the necessary resources and experience to preside over this matter, and the ability to steer this complicated litigation on an efficient and prudent course.

Furthermore, the Northern District of California is appropriate transferee district because it presents a geographically convenient and accessible venue for this nationwide litigation. At least two cases (including the first filed action currently pending) have been filed in this district. One of the *related* cases is also pending in the Los Angeles Superior Court and will likely be removed to the Central District of California. The Northern District of California is easily accessible venue for nationwide litigation and will provide all parties with the geographically convenient forum all litigants and pending actions. San Francisco offers a large number of airports and places to stay. San Francisco International Airport is less than 15 miles from the proposed transferee courthouse. Furthermore, the Northern District of California holds its hearings remote via Zoom, allowing public access.

Alternatively, the *Seirafi* Plaintiffs propose assigning cases to Honorable William J. Martini in the District Court of New Jersey, where Defendant is headquartered and five of the related actions are pending. *See, e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d at 1374–75 ("We select the District of Maryland as the transferee district for this litigation. Marriott is headquartered in that district, and relevant documents and witnesses thus likely will be found there."). Judge Martini is a Senior Judge, and also has the necessary experience to administer this MDL matter.

## IV.   CONCLUSION

For the reasons set forth herein, Plaintiffs' motion for transfer of actions pursuant to 28 U.S.C. § 1407 should be granted and these related actions, as well as any subsequently filed actions containing similar allegations, should be transferred to the U.S. District Court for the Northern District of California or, in the alternative, to the United States District Court of New Jersey.


Dated: October 7, 2022                                   Respectfully submitted,


                                                          /s/ Ryan J. Clarkson
                                                         Ryan J. Clarkson, Esq.
                                                         Katherine A. Bruce, Esq.
                                                         Bahar Sodaify, Esq.

Yana Hart, Esq.
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Email: rclarkson@clarksonlawfirm.com
Email: kbruce@clarksonlawfirm.com
Email: bsodaify@clarksonlawfirm.com
Email: yhart@clarksonlawfirm.com

Sabita J. Soneji, Esq.
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Tel: (510) 250-3370
Email: ssoneji@tzlegal.com

Hassan A. Zavareei, Esq.
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Ste. 1000
Washington, DC 20036
Tel: (202) 973-973-0900
Email: hzavareei@tzlegal.com

*Counsel for Movants Naeem Seirafi and
Shelby Holtzclaw*