BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In Re: SAMSUNG CUSTOMER DATA SECURITY BREACH LITIGATION | MDL Docket No. 3055 |

**INTERESTED PARTY RESPONSE OF PLAINTIFFS MATT DAVIS, LAKIA MORTON AND ZACHARY CHERNIK IN SUPPORT OF PLAINTIFFS SEIRAFI AND HOLTZCLAW'S MOTION FOR CENTRALIZATION AND TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407**

Plaintiffs Matt Davis, Lakia Morton, and Zachary Chernik, plaintiffs in the action titled *Davis et al. v. Samsung Electronics America, Inc.*, Case No. 1:23-cv-00251 (N.D. Ga.) (filed January 18, 2023), respectfully submits this response to the pending motion submitted pursuant to 28 U.S.C. § 1407 requesting transfer and centralization of all actions that seek economic and equitable remedies due to the recent data breach experienced by Samsung. For the reasons below, Plaintiffs Davis, Morton and Chernik support centralization and transfer of the actions (and any subsequently filed tag-along or related actions) pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings. If the Panel agrees that transfer is appropriate, Plaintiffs Davis, Morton and Chernik support transfer to the Northern District of California.

    **I.**    **TRANSFER IS APPROPRIATE UNDER 28 U.S.C. § 1407(a)**

Centralization and transfer are permitted if civil actions pending in different districts "involv[e] one or more common questions of fact" and this Panel determines that transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). "The objective of transfer is to eliminate duplication in

discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." Manual for Complex Litigation, § 20.131 (4th ed. 2004). Transfer and centralization for pretrial proceedings in this instance would achieve each of those objectives.

"Transfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant when the actions still arise from a common factual core." *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012). Where, as here, pending cases bring forth claims against a common single defendant and are based on the same core factual allegations/events, the Panel routinely has found common questions of fact. *See In re Bausch & Lomb, Inc. Contact Lens Solution Prods. Liab. Litig.*, 444 F. Supp. 2d 1336, 1338 (J.P.M.L. 2006) (transferring cases sharing factual allegations); *In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.*, 229 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) (finding common factual questions where all actions focused on a common allegation); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (finding that presence of a common defendant gave rise to common factual issues).

Centralization will further the convenience of the parties and further the just and efficient conduct of all of the actions because it will eliminate repetitive discovery and any possibility of conflicting rulings. *See In re Cross-Florida Barge Canal Litig.*, 329 F. Supp. 543, 544 (J.P.M.L. 1971) ("Pretrial coordination or consolidation will eliminate the likelihood of repetitive discovery . . . serving the convenience of the parties and witnesses and furthering the just and efficient conduct of the litigation."). Due to the similar factual allegations, both discovery and motion practice will overlap considerably. To the extent that there are any material factual

differences among the actions and related actions, these can be managed through the wide variety of case management tools available to transferee courts. Thus, transfer and centralization will prevent the parties, and courts, from addressing similar discovery issues multiple times and repeatedly deposing like witnesses and producing like documents.

Centralization will avoid inconsistent rulings as the actions involve similar facts and claims, and many of the actions are proposed class actions that overlap. *See In re Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970) ("[A] potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings."). As a result, without transfer and centralization there is a high likelihood of numerous potentially overlapping classes, raising the risk of inconsistent rulings and inefficiency.

In addition, while the parties have attempted informal coordination, the sheer number of jurisdictions, matters, plaintiffs and counsel makes this prospect non-viable here. *Accord In re Valsartan N-Nitrosodimethylamine Ndma Contamination Prods. Liab. Litig.*, 363 F. Supp. 3d 1378, 1382 (J.P.M.L. 2019) ("We find that Section 1404 transfer is not a practicable alternative to centralization, given the number of actions, districts, and counsel for plaintiffs and defendants . . . The number of involved districts and counsel also would make efforts to informally coordinate discovery and pretrial motions impracticable."). As a result, centralization is appropriate and the cases should all be transferred to one jurisdiction for pretrial proceedings.

## II. THE NORTHERN DISTRICT OF CALIFORNIA IS THE BEST POTENTIAL TRANSFEREE VENUE

Should the Panel decide that centralization and transfer are appropriate, Plaintiffs Davis, Morton and Chernik submit that the Northern District of California is the most appropriate transferee Court. The actions should be transferred to the Northern District of California because it: 1) has a manageable docket load and is underutilized as a transferee court; 2) Defendant maintains a corporate office in the Northern District of California that is likely to be the site of witnesses and information related to the case; and 3) Honorable Jacqueline Scott Corley, who is already presiding over one related action, is an experienced judge who is well-suited to serve as a transferee judge.

The Northern District of California has a manageable docket load that could accommodate transfer of this significant piece of litigation. The Panel previously has chosen transferee districts that are "underutilized" and that have favorable docket conditions. *In re Stryker Rejuvenate, ABG II Hip Implant Prods. Liab. Litig.*, 949 F. Supp. 2d at 1380 (transferring to a district with "favorable docket conditions"); *In re Groupon, Inc., Mktg. and Sales Practices Litig.*, 787 F. Supp. 2d 1362, 1364 (J.P.M.L. 2011) (transferring to a "relatively underutilized transferee district"); *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011) (transferring to a district with "favorable docket conditions"); *In re Lending Tree, LLC, Customer Data Security Breach Litig.*, 581 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (transferring to a district that "has the capacity to handle this docket and, in the past, has been underutilized as a transferee district").

As Plaintiffs Bennett, Gelizon and Hasson point out, the Northern District of California has a lower caseload per judge (890 pending cases per judge as of June 2022), as opposed to the

District of New Jersey (3,815 cases per judge). As such, transfer to the Northern District of California will result in a more efficient utilization of judicial resources. *See* ECF No. 37 at 5-8.

Moreover, the Northern District of California is accessible and suitable for multidistrict litigation, and would be a convenient forum for many parties, including Defendant. For parties not within driving distance, San Francisco International Airport offers non-stop flights to over 40 international cities and 75 domestic cities throughout the United States.[1] Defendant's operations are also partially based in California, and evidence is likely to be in the Northern District and South Korea, making the proximity substantially closer than other proposed districts. *See* ECF No. 48 at 12-13.

Finally, Honorable Jacqueline Scott Corley served for more than ten years as a federal magistrate judge before her appointment as a federal district judge in March 2022. She therefore has significant experience presiding over federal actions generally. She also has prior multidistrict litigation experience, as she has been presiding over *In re Qualcomm Antitrust Litig.* (MDL No. 2773) since April 2022, shortly after receiving her commission. Despite this assignment, Judge Corley has a favorable case load and time that supports transfer for her oversight. *See* ECF No. 48 at 13-14.  For these reasons, Plaintiffs Davis, Morton and Chernik believe Judge Corley is eminently qualified to serve as the transferee judge for these actions.

## **CONCLUSION**

For the reasons above, Plaintiffs Davis, Morton and Chernik respectfully request this Panel order that all actions be centralized and transferred to the Northern District of California.

---

[1] https://www.flysfo.com/passengers/flight-info

Dated January 19, 2023

Respectfully submitted,

*s/ Kate M. Baxter-Kauf*_____
Kate M. Baxter-Kauf (MN #0392037)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4097
Facsimile: (612) 339-0981
kmbaxter-kauf@locklaw.com
*Counsel for Plaintiffs Davis, Morton and Chernik*

4889-9593-6843, v. 1