**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| In re: ) | |
| ) | MDL Docket No. 3055 |
| SAMSUNG DATA BREACH ) | |
| LITIGATION ) | |
| ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO
THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR
COORDINATED OR <u>CONSOLIDATED PRETRIAL PROCEEDINGS</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT ..........................................................................................................................2

    A. The Parties Agree That Consolidation and Transfer is Proper

    B. The Northern District of California is the Most Appropriate Transferee Venue ..................................................................................................................2

        1. Plaintiffs Almost Universally Prefer the Northern District of California as their Primary or Alternative Choice of Forum ................................................2

        2. Docket Congestion and Trial Delays Favor Transfer to the Northern District of California ................................................................................................3

        3. The Northern District of California Is the Most Convenient Forum ............4

            a. Accessibility ................................................................................................4

            b. Proximity of the Parties................................................................................5

            c. Proximity to the Evidence............................................................................8

        4. Judge Corley Is Qualified and Able to Manage this MDL ............................9

        5. Data Breach Law Is More Mature in the Northern District of California than the Other Proposed Venues ..................................................................10

        6. The Northern District of California Is Home to the First-Filed Action .....11

III. CONCLUSION....................................................................................................................13

ii

# TABLE OF AUTHORITIES

**Cases**

*Ambrosia Coal and Const. Co. v. Pages*,
  368 F.3d 1320 (11th Cir. 2004) ..................................................................................... 11

*In re Acetaminophen – ASD/ADHD Products Liability Litigation*,
  MDL No. 3043
  2022 WL 5409345 (J.P.M.L. 2022) ............................................................................... 10

*In re Air Crash Near Castellon, Spain.*,
  296 F.Supp.2d 1372 (J.P.M.L. 2003) ............................................................................. 10

*In re Air Crash Near Van Cleve, Miss.*,
  486 F.Supp. 926 (J.P.M.L. 1980) ..................................................................................... 7

*In re Am. Family Publrs. Bus. Pracs. Litig.*,
  MDL No. 1235
  1998 U.S. Dist. LEXIS 5551 (J.P.M.L. 1998) ................................................................. 2

*In re Bank of Am. Credit Prot. Mktg. and Sales Pracs. Litig.*,
  804 F.Supp.2d 1372 (J.P.M.L. 2011) ............................................................................. 12

*In re Broiler Chicken Grower Antitrust Litig.*,
  509 F.Supp.3d 1359 (J.P.M.L. 2020) ............................................................................. 12

*In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*,
  MDL No. 3040
  2022 WL 3134131 (J.P.M.L. 2022) ................................................................................. 2

*In re H & R Mortg. Corp. Prescreening Litig.*,
  435 F.Supp.2d 1347 (J.P.M.L. 2006) ............................................................................. 10

*In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*,
  598 F.Supp.2d 1384 (J.P.M.L. 2009) ............................................................................. 12

*In re McDonald's French Fries Litig.*,
  444 F.Supp.2d 1342 (J.P.M.L. 2006) ............................................................................... 4

*In re Mush Cay Litig.*,
  330 F.Supp.2d 1364 (J.P.M.L. 2004) ............................................................................. 12

*In re Nissan Motor Corp. Antitrust Litig.*,
  352 F.Supp. 960 (J.P.M.L. 1973) ..................................................................................... 7

*In re Novastar Home Mortg. Inc. v. Mortg. Lending Pracs. Litig.*,
   368 F.Supp.2d 1353 (J.P.M.L. 2005)......................................................................................12

*In re PrimeVision Health, Inc. Cont. Litig.*,
   206 F.Supp.2d 1369 (J.P.M.L. 2002)...............................................................................10, 12

*In re Progressive Corp. Ins. Underwriting & Rating Pracs. Litig.*,
   259 F.Supp.2d 1370 (J.P.M.L. 2003)......................................................................................10

*In re Qualcomm Antitrust Litig.*,
   273 F.Supp.3d 1373 (J.P.M.L. 2017).....................................................................................5, 9

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
   MDL No. 3037
   2022 WL 3134144 (J.P.M.L. 2022)..........................................................................................2

*In re Rhodia S.A., Sec. Litig.*,
   398 F.Supp.2d 1359 (J.P.M.L. 2005)........................................................................................4

*In re Sodium Gluconate Antitrust Litig.*,
   MDL No. 1226
   1998 U.S. Dist. LEXIS 5073 (J.P.M.L. 1998)..........................................................................5

*In re Tyco Int'l, Ltd. Sec. Litig.*,
   MDL No. 1335
   2000 U.S. Dist. LEXIS 5551 (J.P.M.L. 2000).........................................................................3

*In re Veeco Instruments Inc. Sec. Litig.*,
   387 F.Supp.2d 1365 (J.P.M.L. 2005)....................................................................................2, 3

*In re Xybernaut Corp. Sec. Litig.*,
   403 F.Supp.2d 1354 (J.P.M.L. 2005)........................................................................................3

*Kytel Inte'l Group, Inc. v. Rent-a-Center, Inc.*,
   43 Fed.Appx. 420 (2d Cir. 2002).............................................................................................11

*Schmidt v. Verascomp, Inc.*,
   No. 08-60084-CIV
   2008 U.S. Dist. LEXIS 129150 (S.D. Fla. July 29, 2008).......................................................11

*Smart v. Sunshine Potato Flakes, LLC*,
   307 F.3d 684 (8th Cir. 2002) ..................................................................................................11

Statutes

28 U.S.C. § 1407 .............................................................................................................................13

I.     **INTRODUCTION**

None of the parties dispute that all actions share common issues of fact, nor that centralization will promote just and efficient conduct for the parties and witnesses. The only dispute involves the most prudent transferee forum. The majority of plaintiffs venued in other jurisdictions—Nevada, Illinois, New York, and Florida—join Movants' request for transfer to the Northern District of California, where the first-filed federal action is pending, recognizing it as the most prudent forum. By comparison, each of the New Jersey plaintiffs, supported only by the other New Jersey plaintiffs (and one plaintiff in the Northern District of California), argue for the District of New Jersey because Defendant is headquartered there, and five actions have been filed there, several of whom prefer the Northern District of California as their alternative.

Tenuous is Defendant's push for transfer to Nevada, a state with zero relevant ties to Defendant and only one plaintiff who supports transfer to California. Defendant argues Nevada is easily accessible due to its airport and hotels, which is also true of Northern California, and by itself doesn't warrant transfer to Nevada. Defendant alternatively proposes transfer to the Southern District of New York because it too is an accessible venue that is equidistant to Samsung's headquarters; but Defendant's alternative preference is belied by its admission that any presumed proximity of witnesses and evidence to New Jersey is "vastly overstate[d]" given "today's technology" and "remote working arrangements." Dkt. 43, p. 17.

The Panel should transfer to the Northern District of California because: (1) all plaintiffs across the country support transfer there as their first preference except the New Jersey plaintiffs and a single California plaintiff, many of whom prefer it in the alternative; (2) it will avoid exacerbating overly burdened judges in New Jersey and Nevada and has the fastest disposition of civil cases from the time of filing through trial; (3) it is the most convenient location for the witnesses (including Samsung's domestic and global employees); (4) its law on data breaches is better developed than the other districts due to its proximity to Silicon Valley and attendant frequency of filings there; (5) the parties unanimously agree Judge Corley is qualified, and she has fewer cases than judges in the other districts; and (6) the first-filed federal case is pending there.

1

II.     ARGUMENT

    A.     **The Parties Agree that Consolidation and Transfer is Proper**

All parties agree that all four factors considered under § 1407 weigh in favor of consolidation and transfer. Dkts. 20, 35, 37, 39, 42, 43, 45, 47. The issue now turns to which forum is the most appropriate transferee forum.

    B.     **The Northern District of California Is the Most Appropriate Forum**

In determining the most prudent transferee court, the Panel is to weigh numerous factors, most importantly: caseload, accessibility/convenience, and the judge's qualifications. *See, e.g., In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.,* No. 3040, 2022 WL 3134131, at *2 (J.P.M.L. Aug. 3, 2022) (selecting district because "centrally located and easily accessible"); *In re Recalled Abbott Infant Formula Prods. Liab. Litig.,* No.3037, 2022 WL 3134144, at *2 (J.P.M.L. Aug. 5, 2022) (selecting district because judge "skilled jurist who is well-versed in the nuances of complex, multidistrict litigation"); *In re Veeco Instruments Inc. Sec. Litig.*, 387 F.Supp.2d 1365, 1366 (J.P.M.L. 2005) (selecting district because "more favorable caseload statistics"). These factors weigh in favor of transfer to the Northern District of California.

        1.     **Plaintiffs Almost Universally Prefer the Northern District of California as their Primary or Alternative Choice of Forum**

Supporting Movants' petition as their first choice of forum are plaintiffs from districts all across the country: *Bennett* (N.D. Ill.), *Gelizon* (D. Nev.), *Newberry* (N.D. Ill), *Mark* (S.D.N.Y.), *Wenzel* (M.D. Fl.), and *Kelechian* (C.D. Cal.), while a number of the New Jersey Plaintiffs support the Northern District of California as their alternative preference.[1] *In re Am. Family Publrs. Bus. Pracs. Litig.,* No. 1235, 1998 U.S. Dist. LEXIS 12514, at *5 (J.P.M.L. Aug. 12, 1998) (transferring actions to a forum where "many parties support centralization there" and the

---

[1] The plaintiffs' preferred districts are: Movants, **N.D. Cal.**, Dkt. 1-1; New Jersey, D. N.J., Dkt. 20; Rollins Plaintiffs, D. N.J., Dkt. 35; Bennett, **N.D. Cal.**, Dkt. 37; Newberry Plaintiffs, **N.D. Cal.**, Dkt. 39; Mark, **N.D. Cal.**, Dkt. 42; Wenzel, **N.D. Cal.**, Dkt. 45; Gutierrez, D. N.J., Dkt. 47; and Kelechian, **N.D. Cal.** (counsel for Plaintiff Kelechian have not filed their petition in support but have communicated to Movants' counsel their intent to do so within the next 48 hours).

court's "docket is less congested" than other proposed alternatives).

## 2. Docket Congestion and Trial Delays Favor Transfer to the Northern District of California

Transfer to New Jersey or Nevada will further burden severely congested dockets, an important factor the Panel considers when deciding the most prudent transferee forum. *See, e.g., Veeco*, 387 F.Supp.2d at 1366 (deciding on a district partially because it had "more favorable caseload statistics than [the alternate district]."); *In re Xybernaut Corp. Sec. Litig.*, 403 F.Supp.2d 1354, 1355 (J.P.M.L. 2005) (same); *In re Tyco Int'l, Ltd. Sec. Litig.*, No. 1335, 2000 U.S. Dist. LEXIS 5551, at *3 (J.P.M.L. Apr. 26, 2000) (same). Judges in the Northern District of California have a much lower caseload per judge, averaging **890** pending cases compared to a whopping **3,815** pending cases per judge in the District of New Jersey.[2]

More importantly, however, it takes substantially less time on average to bring cases to trial in the Northern District of California than any other proposed transferee district. In fact, it takes <u>less than three years</u> to bring a case to trial in the Northern District of California, while New Jersey and Nevada take <u>more than four years</u>, and the Southern District of New York takes more than <u>10 months longer</u> to get to trial than in the Northern District of California.[3] These statistics render unpersuasive Samsung's argument that Nevada has a less congested docket than other federal courts (dkt. 43 at 12), given that docket requires parties to wait more than a year longer to get to trial than in the Northern District of California.[4]

Focusing in on Judge Corley's caseload, according to a Lexis Nexis search,[5] she currently has 252 cases. *See* Danas Decl., Exh. 1. Judge Corley therefore has fewer cases than Judge Martini

---

[2] *United States District Courts—National Judicial Caseload Profile*, UNITED STATES COURTS, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last visited Nov. 9, 2022) (stats as of June 2022).
[3] *Id.* (stats revealing time to trial of 34.7 months in N.D. Cal. versus 50.2 months in D. N.J., 51.4 months in D. Nev., and 44.4 months in S.D.N.Y.).
[4] *Id.*
[5] These searches included all open or unknown cases from the date the judge was appointed to their current position to the present.

3

(approx. 294), and substantially less than Judge Gordon (approx. 920) and Judge Caproni (approx. 375). *See* Danas Decl., Exhs. 2, 3, 4. Judge Corley's caseload is far less than the average district court judges in the District of New Jersey (averaging over 3,800 cases), the District of Nevada (averaging 644 cases), and the Southern District of New York (averaging 667 cases).[6] Therefore, transfer to the Northern District of California, particularly Judge Corley, will efficiently distribute judicial resources and avoid overburdening other districts.

### 3. The Northern District of California Is the Most Convenient Forum

In determining whether a forum is convenient for the parties, the Panel looks at the forum's accessibility and proximity to the parties and evidence. *See In re Rhodia S.A., Sec. Litig.*, 398 F.Supp.2d 1359, 1360 (J.P.M.L. 2005) (transferee district convenient to parties because "provides an accessible, metropolitan location"); *In re McDonald's French Fries Litig.*, 444 F.Supp.2d 1342, 1343 (J.P.M.L. 2006) (transferee district offered "relatively geographically central and accessible forum").

#### a. Accessibility

The Northern District of California is an easily accessible metropolitan location with a large airport, widely available lodging, and public transportation. It is located only **13 miles away** from San Francisco International Airport (SFO), a mere 25-minute drive from the airport, with frequent and expeditious public transport available between SFO and downtown San Francisco known as Bay Area Rapid Transit ("BART"). BART provides local and international guests with convenient and easy navigation and trip planning, a view of real-time departures through its online system, schedules and maps online, and options for mobile pay.[7] San Francisco has an abundance of affordable hotel accommodations, meeting spaces, places to eat, coffee shops, pharmacies, grocery and convenience stores, banks, and other amenities. These accommodations are within walking distance to the courthouse. By comparison, Las Vegas'

---

[6] *See* fn. 2, *supra*.
[7] *See generally Bay Area Rapid Transit,* BART.GOV, https://www.bart.gov/ (last visited Nov. 9, 2022).

public transportation near the courthouse is limited to a bus system which mainly services casinos,[8] while the tram system which services the strip does not service the area near the courthouse.[9]

### b. Proximity to the Parties

The Northern District of California is geographically central for the parties and witnesses, including key witnesses from Samsung located in the San Francisco area. Defendant admits that it maintains a large corporate office in San Jose, California, less than an hour away from the proposed transferee courthouse. This office houses up to 2,000 employees.[10] Additionally, it serves as the headquarters for two of Samsung's wholly owned subsidiaries, Samsung Semiconductor and Samsung Research America ("SRA"). Many of the witnesses with knowledge about Samsung's data security practices[11] and the data breach are believed to be located at the San Jose office. Additionally, Samsung is a wholly owned subsidiary of Samsung Electronics, Ltd., a South Korean corporation. *See* Dkt. 11. The Northern District of California is substantially closer to, and more convenient for, witnesses from Samsung's parent company than New Jersey or Nevada, given its closer proximity to South Korea and nearby SFO international airport.[12] *See In re Qualcomm Antitrust Litig.*, 273 F.Supp.3d 1373, 1376 (J.P.M.L. 2017) (holding Northern District of California convenient forum for witnesses based in Asia); *In re Sodium Gluconate Antitrust Litig.*, Dkt. no. 1226, C.A. No. 4:97-4142, C.A. No. 1:98-460, C.A. No. 1:97-12858, 1998 U.S. Dist. LEXIS 5073, at *3 (J.P.M.L. Apr. 9, 1998) (transferring

---

[8] *See Ways to Travel,* LAS VEGAS REG'L TRANS. COMM'N, https://www.rtcsnv.com/ways-to-travel/schedules-maps/maps-guides/ (last visited Nov. 9, 2022).
[9] *See Monorails and Trams in Las Vegas,* VEGAS.COM, https://www.vegas.com/transportation/las-vegas-monorails/ (last visited Nov. 9, 2022).
[10] James Vincent*, Let's Go Inside Samsung's New Silicon Valley Headquarters*, THE VERGE (Sep. 25, 2015, 2:57 AM), https://www.theverge.com/2015/9/25/9396587/samsung-silicon-valley-offices-pictures.
[11] *See infra* Part II.B.3.
[12] *See also* Dkt. 37, p. 6 (agreeing that N.D. Cal. is most convenient "to the extent that Samsung requires witnesses or decision-makers from its parent company in South Korea"); Dkt. 39, p. 3 (agreeing that N.D. Cal. "is a more convenient location for all parties, and especially for Samsung's witnesses from its parent corporation in South Korea.").

5

to Northern District of California because "San Francisco is as accessible and convenient a location as Chicago or Boston for a litigation whose parties are found in Japan, the United States, and Europe.")

The Northern District of California is also home to Samsung Semiconductor and SRA, subsidiaries of Defendant, with personnel who have knowledge, information, and evidence related to the breach. When users sign up for a Samsung account, they sign up for a single, universal account applicable to all Samsung services, as opposed to separate and independent accounts for each of Samsung Electronics, Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Samsung Research America, and so on. As such, the breached data is not limited to Samsung Electronics America, as <u>all of these subsidiary companies</u> have access to user data and other evidence regarding the data breach. This is powerful in light of Samsung Semiconductor and SRA's focus on data security.[13] Additionally, high-level Samsung data security employees are based in the San Jose office. *See* Dkt. 1, p. 7, n.6. These facts undermine Samsung's and New Jersey plaintiffs' arguments that the location of Samsung's subsidiary employees is irrelevant.

Indeed, while Samsung admits that it maintains offices and employees in the Northern District of California, it nevertheless argues that those employees "have no bearing" on the security incident. Dkt. 43, p. 17. Samsung altogether fails to affirmatively share the location of relevant witnesses, yet unabashedly pushes for transfer to Nevada where it admittedly has zero witnesses or other nexus.[14] Samsung's silence on this issue is deafening: it cannot deny the fact that witnesses located in South Korea were involved in the data breach.[15] Samsung's arguments requesting transfer to Nevada should be rejected because the convenience of the airport alone (especially when it is less convenient than SFO) is insufficient to warrant transfer. Samsung's alternative forum, the Southern District of New York, is similarly unpersuasive.

---

[13] *See infra* Part II.B.3.
[14] *See* Dkt. 43, p. 17.
[15] *See* Dkt. 11 (disclosing that Samsung is owned by Samsung Electronics Co., Ltd., a South Korean corporation).

6

The New Jersey Movants argue that New Jersey is a more convenient forum for this litigation, because Samsung's headquarters are in New Jersey and the five New Jersey actions are filed in New Jersey. However, as Samsung points out, due to the remote working conditions, the relevance to its headquarters location is overly emphasized.[16] Importantly, in its response Samsung does not make the same argument as to its West Coast employees. *See generally* Dkt. 43. Merely because Samsung's headquarters are in one forum does not mean that forum is the most convenient for Samsung to litigate, especially where many witnesses are located on the West Coast. *See, e.g., In re Nissan Motor Corp. Antitrust Litig.*, 352 F.Supp. 960, 961 (J.P.M.L. 1973) (denying transfer to district where Defendant's headquarters located when evidence equally available at Defendant's other offices); *In re Air Crash Near Van Cleve, Miss., on Aug. 13, 1977,* 486 F.Supp. 926, 928 (J.P.M.L. 1980) (transferring to Northern District of Oklahoma despite Defendants being headquartered in Texas). As discussed above, Samsung's San Jose office is one of their largest offices, serves as the headquarters for two relevant subsidiaries, and is the closest location for its parent company. In this case, litigating near its San Jose corporate office is more convenient than litigating near its New Jersey headquarters, a position shared by plaintiffs from Illinois, Florida, New York, Nevada, and the Central District of California.

The majority of Samsung's witnesses will likely be from its San Jose office (home to Samsung Semiconductor and SRA), and at its parent's headquarters in South Korea. Samsung argues that SRA is merely a "research facility." Dkt. 43, p. 15. However, SRA "plays a critical role in developing next generation software, user experiences, and services for Samsung Electronics in key domains, such as artificial intelligence, 5G/6G communication networks, and digital health, among others."[17] SRA also focuses on research and development of KNOX

---

[16] Movants contend that the New Jersey district is the best alternative forum because of Samsung's connections with that forum.
[17] *Samsung Research America,* SAMSUNG RESEARCH, https://research.samsung.com/sra (last visited Nov. 9, 2022).

Security, a Samsung data security product.[18] Because of SRA's integration into Samsung's security systems, SRA has knowledge of the status, inner workings, and strengths and weaknesses of Samsung's data security systems. Samsung Semiconductor also focuses on data security, boasting "top-grade security to payments, authentications, and much more."[19] Samsung Semiconductor and SRA personnel in California and South Korea involved in the data breach possess relevant facts regarding how Samsung uses and maintains the personal identifying information lost in the data breach. Even if some witnesses are located in New Jersey (despite Samsung indicating otherwise and deemphasizing the importance of New Jersey headquarters), California is the most central of these locations. Samsung notably does not argue that any of its related entities or employees are located in Nevada, because none of them work in Nevada.

    c.  **Proximity to the Evidence**

Substantial evidence related to the data breach is likely to be in the Northern District of California and South Korea. Samsung understandably downplays the importance of its New Jersey headquarters' location as "the location of witnesses and evidence given today's technology." Dkt. 43, p. 17. With data breaches, most pertinent evidence is typically stored on servers. Samsung has 17 data centers globally, which contain the servers, but Samsung does not publicly disclose all of their locations. It does disclose the location of three of them (Suwon, Sangam, and Chuncheon), all of which are in South Korea.[20] KNOX, a data security product researched and developed by SRA in San Jose, California advertises servers in "the US, Ireland, Singapore, and India."[21] Because SRA is based in San Jose, and researches and develops KNOX there, it is likely that the data center in question is in San Jose, California. The size and scope of

---

[18] *See Enterprise and Security*, SAMSUNG RESEARCH AMERICA, https://www.sra.samsung.com/enterprise-and-security/ (last visited Nov. 9, 2022).

[19] *Top-notch Security*, SAMSUNG SEMICONDUCTOR, https://semiconductor.samsung.com/security-solution/ (last visited Nov. 9, 2022).

[20] *See Data Center Design/Implementation/Migration*, SAMSUNG SDS, https://www.samsungsds.com/us/data-center-design-implementation-migration/data-center-design-implementation-migration.html (last visited Nov. 9, 2022).

[21] *Knox Documentation*, SAMSUNG KNOX, https://docs.samsungknox.com/admin/knox-manage/faqs/faq-115013698347.htm (last visited Nov. 9, 2022).

the San Jose office, coupled with the types of employees who work there (engineers, data scientists, etc.) further point to the presence of data centers being present in the Northern District of California. Movants have discovered no evidence depicting any presence of Samsung's data centers in New Jersey, New York, or Nevada. These facts and logical conclusions drawn therefrom perfectly align with Samsung's argument that "the New Jersey Movants greatly overstate the perceived convenience of locating an MDL near defendant's headquarters." In short, Defendant's servers are not located in New Jersey—they're located in San Jose, where Samsung's engineers and data scientists work, in the same location as the first-filed federal case in Northern District of California.

### 4.   Judge Corley Is Qualified and Able to Manage this MDL

None of the parties opposing transfer to the Northern District of California contest the Honorable Jaqueline Scott Corley's experience and expertise with managing class actions and complex litigation. *See* Dkt. 20, p. 2 (stating that Judge Corley is "undoubtedly qualified to manage this MDL"); Dkt. 35, p. 9 (stating that Judge Corley is a "well-respected and capable jurist"); Dkt. 43, p. 16 (stating that "the Honorable Jacqueline Scott Corley is undoubtedly qualified to manage this MDL"); *see also* Dkts. 37, 39, 42, 45 (supporting transfer to Judge Corley in the Northern District of California). Thus, all parties agree that Judge Corley has the necessary experience and expertise to preside over this matter, and the ability to steer this complicated litigation on an efficient and prudent course.

The Rollins Plaintiffs and Samsung argue that because Judge Corley is already overseeing one MDL, that adding another would strain judicial resources. However, as a recently appointed judge, Judge Corley has more time and resources to expend on this matter than other judges with larger caseloads.[22] Furthermore, the *Qualcomm* MDL has only 36 associated cases, which still leaves Judge Corley with the most favorable case load to handle this MDL. The Panel considers the caseload of the individual transferee judge in making its decision on a transferee district. *See,*

---

[22] *See supra* Part II.B.2 (comparing Judge Corley's caseload to the other proposed judges and finding that it is significantly lighter).

*e.g., In re Progressive Corp. Ins. Underwriting & Rating Pracs. Litig.*, 259 F.Supp.2d 1370, 1371 (J.P.M.L. 2003) ("We note that the judge assigned . . . has a caseload favorable to receiving the assignment."); *In re H & R Mortg. Corp. Prescreening Litig.*, 435 F.Supp.2d 1347, 1349 (J.P.M.L. 2006) ("[T]he judge to whom we are assigning this litigation is an experienced jurist with favorable caseload conditions"); *In re PrimeVision Health, Inc. Cont. Litig.*, 206 F.Supp.2d 1369, 1370 (J.P.M.L. 2002) (assigning to "a judge with a favorable caseload"); *In re Air Crash Near Castellon, Spain on Oct. 10, 2001,* 296 F.Supp.2d 1372, 1373 (J.P.M.L. 2003) (assigning to a judge that "has a relatively favorable caseload for accepting [the] assignment."). As noted, *supra*, Judge Corley has a caseload of 251 cases compared to Judge Martini's 292, Judge Gordon's 496, and Judge Caproni's 373. In addition, the Northern District of California has a shorter duration to trial by at least 10 months of the other proposed transferee courts in New Jersey, Nevada, or New York.[23] Thus, Judge Corley's caseload relative to the other three proposed transferee judges weighs in favor of transfer to the Northern District of California, which will encourage a more efficient distribution judicial resources, avoid overburdening other districts, and ensure expeditious proceedings.

### 5. Data Breach Law Is More Mature in the Northern District of California than the Other Proposed Venues

Because of the presence of Silicon Valley and major tech companies in the Northern District of California, data breach claims are pursued more frequently there than in the other proposed districts. *See* Danas Decl., Exh. 5 (a Lexis Nexis search of "data breach" cases yielding 135 cases in the Northern District of California, 61 in New Jersey, 51 in the Southern District in New York, and only 6 in Nevada). As such, the relevant law in this district is more developed, and the judges are more familiar with the law and the issues. *See, e.g., In re Acetaminophen – ASD/ADHD Prods. Liab. Litig.,* No. 3043, 2022 WL 5409345, at *3 (J.P.M.L. Oct. 5, 2022)

---

[23] *United States District Courts—National Judicial Caseload Profile*, UNITED STATES COURTS, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last visited Nov. 9, 2022).

(transferring to Judge Cote partially because she has MDL experience in pharmaceutical products liability and industrywide dockets, issues similar to the litigation at hand).

### 6. The Northern District of California Is Home to the First-Filed Action

Samsung argues that because the Nevada state court case was filed before the Northern District of California federal case, it enjoys "first-filed" status, and all actions therefore should be consolidated and transferred there. However, as discussed *supra*, transfer to Nevada is not appropriate given Defendant's lack of nexus to Nevada (and substantial ties to California), the presence of evidence in California, the convenience to Defendant's employees in South Korea, the centralized location for parties/witnesses, and the efficient distribution of judicial resources.

Moreover, Movants dispute that the Nevada action is the "first filed" since the Nevada action was originally filed in state court and subsequently removed to the federal court. *Schmidt v. Verascomp, Inc.*, No. 08-60084-CIV, 2008 U.S. Dist. LEXIS 129150, at *3 n.1 (S.D. Fla. July 29, 2008) ("[I]t is now well settled that the first-filed rule[] does not apply when the first-filed action is pending in state court."); *Ambrosia Coal and Const. Co. v. Pages*, 368 F.3d 1320, 1328, 95 Fed. Appx. 1320 (11th Cir. 2004) (general principle requiring transfer of action to avoid duplicative litigation "does not apply . . . when the duplicative litigation arises between state and federal courts"); *Kytel Inte'l Group, Inc. v. Rent-a-Center, Inc.*, 43 Fed.Appx. 420, 422 (2d Cir. 2002) (error for district court to dismiss on the basis of the first-filed rule because the first-filed action was in state court: "the only grounds for a federal court to refrain from exercising its jurisdiction in favor of a pending state proceeding . . . would be under Colorado River"); *Smart v. Sunshine Potato Flakes, LLC,* 307 F.3d 684, 687 (8th Cir. 2002) ("when the issue is whether a federal court should defer to a pending suit in state court . . . the order in which jurisdiction was obtained, while still a relevant factor in applying the abstention doctrine, is far less apt to be determinative because of the federal court's 'virtually unflagging obligation to exercise its jurisdiction'").

Furthermore, where a number of cases were filed approximately at the same time,[24] the panel also weighs procedural progression of the cases. *See, e.g., In re PrimeVision Health, Inc. Cont. Litig.*, 206 F.Supp.2d 1369, 1370 (J.P.M.L. 2002) (noting that the fact that an action that had been progressing for several months in a district weighed in favor of transfer to that district, despite it not being first-filed there); *In re Broiler Chicken Grower Antitrust Litig.*, 509 F.Supp.3d 1359, 1362 (J.P.M.L. 2020) (transferring because the forum was not only first-to-file, but also the "most procedurally advanced"); *In re Mush Cay Litig.*, 330 F.Supp.2d 1364, 1364 (J.P.M.L. 2004) (noting that the action was not only first-filed in the transferee venue, but also "proceeding apace" there); *In re Novastar Home Mortg. Inc. v. Mortg. Lending Pracs. Litig.*, 368 F.Supp.2d 1353, 1354 (J.P.M.L. 2005) (noting that the transferee district not only contained the first-filed action, but also that the action was "proceeding well"); *In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*, 598 F.Supp.2d 1384, 1386 (J.P.M.L. 2009) (holding that transfer to C.D. Cal. was appropriate not only because the first-filed action was there, but also because the "most procedurally advanced actions are pending there"); *In re: Bank of Am. Credit Prot. Mktg. and Sales Pracs. Litig.*, 804 F.Supp.2d 1372, 1373 (J.P.M.L. 2011) (transferring to N.D. Cal. partially because the "first-filed and relatively most procedurally advanced action" was pending there). Judge Corley set a Case Management Conference for December 20, 2022 in the *Seirafi* action, and ordered the parties to submit a case management statement by December 13, 2022. (Dkt. 15). Thus, Movants' first-filed status and case progress also weigh in favor of transfer to the Northern District of California.

Even assuming, *arguendo*, that Nevada is deemed to have "first-filed" status based on the date stamp of the state complaint, Nevada is severely lacking on other factors, rendering transfer to Nevada imprudent.

---

[24] Here, the *Bennett* and *Gelzion* state actions were filed on the same day as Movants' complaint.

12

### III. CONCLUSION

For the reasons set forth herein, Movants Naeem Seirafi and Shelby Holtzclaw's motion for transfer of actions pursuant to 28 U.S.C. § 1407 should be granted and these related actions, as well as any subsequently filed actions containing similar allegations, should be transferred to the U.S. District Court for the Northern District of California or, in the alternative, to the United States District Court of New Jersey.

Dated: November 9, 2022                                     Respectfully submitted,

                                                                                                 */s/ Glenn A. Danas*
Glenn A. Danas
Ryan J. Clarkson, Esq.
Katherine A. Bruce, Esq.
Bahar Sodaify, Esq.
Yana Hart, Esq.
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Email: gdanas@clarksonlawfirm.com
Email: rclarkson@clarksonlawfirm.com
Email: kbruce@clarksonlawfirm.com
Email: bsodaify@clarksonlawfirm.com
Email: yhart@clarksonlawfirm.com

Sabita J. Soneji, Esq.
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Tel: (510) 250-3370
Email: ssoneji@tzlegal.com

Hassan A. Zavareei, Esq.
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Ste. 1000
Washington, DC 20036
Tel: (202) 973-973-0900
Email: hzavareei@tzlegal.com

*Counsel for Movants Naeem Seirafi and Shelby Holtzclaw*